**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

JONESY L. BLACKMON,

          **Petitioner,**

v.

          **Case No. 3:25-CV-00206-NJR**

UNITED STATES OF AMERICA,

          **Respondent.**

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on Petitioner Jonesy L. Blackmon's motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. (Doc. 1). Blackmon contends that his conviction for distributing a controlled substance (methamphetamine), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), must be vacated because he received ineffective assistance from his trial counsel in violation of his Sixth Amendment rights. For the reasons set forth below, Blackmon's motion is denied.

### BACKGROUND

On August 16, 2022, Blackmon was charged in an indictment with distributing five grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). *See United States v. Blackmon*, No. 3:22-cr-30087-NJR (S.D. Ill.) ("Criminal Case"). At the times relevant to his claims here, he was represented by attorney Andrew Sottile.

Page 1 of 11

On November 13, 2022, Blackmon pleaded guilty to an information that charged him with violating 21 U.S.C. § 841(a)(1) and (b)(1)(C). (Criminal Case, Doc. 48). He admitted in a signed stipulation that he had distributed "approximately 52.9 grams +/- 3.3 grams of actual methamphetamine to a confidential informant." (Criminal Case, Doc. 54). By pleading guilty to § 841(b)(1)(C) rather than (b)(1)(B), he avoided a five-year minimum sentence.

As part of his plea agreement, Blackmon agreed "not to seek a sentence outside of the Guideline range that is ultimately determined to be applicable by the Court." (Criminal Case, Doc. 52, p. 6). The plea agreement predicted that the applicable Guideline range would be 151 to 188 months. (*Id.* at p. 3). It also anticipated that Blackmon would qualify as a career offender under U.S.S.G. § 4B1.1 based on his past criminal convictions. (*Id.* at p. 4).

For its part, the Probation Department assessed that Blackmon's base offense level was 30 because he had possessed more than 50 grams but less than 150 grams of actual methamphetamine. (Criminal Case, Doc. 62, ¶ 24). However, his offense level was increased to 32 because, as the parties anticipated, he qualified as a career offender under § 4B1.1. (*Id.* ¶ 30). His offense level was reduced by three levels to 29 for his acceptance of responsibility. The career offender guideline dictated a Criminal History category of VI. (*Id.* ¶ 56). As a result, Blackmon's Guideline range was 151 to 188 months. Neither side filed any objections, and the Court adopted the Probation Department's recommendation and sentenced Blackmon to 151 months in prison, followed by three years of supervised release. (Criminal Case, Doc. 74). He did not appeal.

Blackmon is presently incarcerated at FCI Marion and is scheduled to be released from custody on May 16, 2034. *See* BOP Inmate BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last visited July 16, 2026).

On December 17, 2024, Blackmon moved for a reduction in sentence. Blackmon argued that he should be resentenced without a disparity between pure methamphetamine and a mixture or substance containing methamphetamine. (Criminal Case, Doc. 77). He also asserted that he "wanted [his trial] attorney to ask for a downward variance based on the policy disagreement with the methamphetamine purity," and stated that his attorney did not counsel the case to the best of his ability in compliance with his Sixth Amendment duties. (*Id.* at p. 9). He also asked the Court to reduce his term of supervised release from three years to one year. (*Id.* at pp. 9-10). The Government moved to recharacterize the motion as a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. (Criminal Case, Doc. 80). With no objection from Blackmon, the Court agreed and docketed the motion as a separate civil case.

The Government then moved to dismiss the § 2255 proceeding, arguing Blackmon had waived his right to collaterally attack his sentence in his written plea agreement. (Doc. 2). The Court agreed that Blackmon's waiver precluded his claim seeking resentencing based on the disparity in treatment between pure methamphetamine and other forms of the drug but held that it did not bar his arguments that he had received ineffective assistance of counsel. (Doc. 4).[1] On August 13, 2025, the Government filed a

---

[1] Although the Court did not explicitly address Blackmon's request for a modification of his term of supervised release in its prior order, the undersigned finds that this claim also is barred by the waiver provision contained in his plea agreement because it "seek[s] modification of" his sentence. (Doc. 4).

response, arguing that Blackmon's ineffective assistance arguments were meritless. (Doc. 5). Blackmon did not file a reply brief.

## LEGAL STANDARD

Section 2255 of Title 28 of the United States Code provides federal prisoners with a post-conviction remedy to test the legality of their detention "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States,* 467 F.3d 1063, 1068 (7th Cir. 2006)). Thus, it "is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citations omitted).

## DISCUSSION

Blackmon argues that his conviction must be vacated because his attorney failed to ask the Court for a downward variance at sentencing based on the disparity between pure methamphetamine and a mixture or substance containing methamphetamine.[2] For context, sentences for methamphetamine offenses are largely driven by statutory and

---

[2] He also asserts that his attorney "did not counsel the case to the best of his abilities," (Doc. 1, p. 9), but the Court does not consider this a distinct ineffective assistance claim because it does not "identify the *specific* acts or omissions of counsel . . . ." *Dugan v. United States,* 18 F.3d 460, 464 (7th Cir. 1994) (emphasis added).

Guidelines provisions that provide for different sentences based on the purity of subject methamphetamine. *See United States v. Pease*, 740 F. Supp. 3d 728, 734 (E.D. Wis. 2024) (citing United States Sentencing Commission, *Methamphetamine Trafficking Offenses in the Federal Criminal Justice System* 2, 45-46, 52 (June 2024)). "These penalties effectively produce a 10-to-1 ratio of actual methamphetamine to methamphetamine mixture, meaning it takes ten times less pure methamphetamine to trigger the same penalty than a mixture containing a detectable amount of methamphetamine." *Id.* at 734-35. This distinction has come under criticism on several fronts, most notably because actual methamphetamine has increasingly become the standard form of the drug, effectively "sever[ing] any connection between the purity of the drug and the defendant's position in the criminal enterprise . . . ." *United States v. Havel*, No. 4:21-CR-3075, 2023 WL 1930686, at *5 (D. Neb. Feb. 10, 2023). As a result, some district courts have elected to vary below the applicable Guideline range when sentencing certain cases involving methamphetamine. *E.g.*, *Pease*, 740 F. Supp. 3d at 735; *United States v. Patrick*, No. 4:23-CR-00206, 2024 WL 1585473, at *4 (D. Idaho Apr. 11, 2024); *United States v. Rodriguez*, 382 F. Supp. 3d 892, 898 (D. Alaska 2019). The Seventh Circuit has confirmed that district courts have the authority to vary downward if they disagree with the Sentencing Commission's methamphetamine guidelines. *See United States v. Bostock*, 910 F.3d 348, 350 (7th Cir. 2018).

Blackmon argues that his attorney was ineffective for failing to ask for a similar variance here. The Government responds that seeking a variance would have amounted to a breach of Blackmon's plea agreement. The Government adds that even if his attorney

Page 5 of 11

had made the argument, there is little prospect it would have resulted in a different sentence because Blackmon's sentence was driven by his career offender status rather than the methamphetamine guidelines.

The Sixth Amendment guarantees criminal defendants the right to counsel. U.S. Const. amend. VI. And "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). To prevail on an ineffective assistance claim, a petitioner is required to "meet the familiar two-part standard set forth in *Strickland.*" *McElvaney v. Pollard*, 735 F.3d 528, 532 (7th Cir. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). The petitioner must show that his counsel's performance was deficient, "meaning it fell below an 'objective standard of reasonableness'" and that his counsel's deficient performance prejudiced him. *Id.* at 532 (quoting *Strickland*, 466 U.S. at 688). In assessing whether an attorney's performance was deficient, a court's review is deferential, and a prisoner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound [] strategy." *Pierce v. Vanihel*, 93 F.4th 1036, 1048 (7th Cir. 2024) (quoting *Mosley v. Atchison*, 689 F.3d 838, 847-48 (7th Cir. 2012)). To establish prejudice, there must be a reasonable probability that, but for the deficient performance, the result of the proceeding would be different. *Strickland*, 466 U.S. at 694.

A court may address the elements of the *Strickland* test "in whichever order is most expedient." *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). Moreover, where a claim of ineffective assistance fails on one prong, the court need not address the other prong

insofar as the failure to satisfy either prong is fatal to the claim. *See Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993).

Blackmon has not demonstrated that his attorney performed deficiently. The Government is correct that the plain language of his plea agreement, in which he agreed "not to seek a sentence outside of the Guideline range that is ultimately determined to be applicable by the Court," effectively precluded his attorney from seeking a variance. (Criminal Case, Doc. 52, p. 6). Had Blackmon nevertheless insisted that his attorney advocate for a below-Guidelines sentence, the Government might have attempted to withdraw from its side of the agreement, putting at risk the benefits Blackmon received, which included his ability to plead to a charge that did not carry a mandatory minimum (*id.* at pp. 1-2), as well as the Government's promise to advocate for a sentence at the low end of the Guidelines range (*id.* at p. 6). "Counsel is not ineffective for declining to take a course of action that would have the effect of breaching a plea agreement into which the parties knowingly, voluntarily, and intelligently entered." *Perez v. United States*, No. 23-CV-718, 2024 WL 1138267, at *7 (E.D. Wis. Mar. 15, 2024).

Even if Blackmon could establish deficient performance, he cannot demonstrate prejudice. The Court determined that the applicable base offense level was 30 because Blackmon had distributed at least 50 grams but less than 150 grams of Methamphetamine (actual). *See* U.S.S.G. § 2D1.1(c)(5). Although a lower offense level might have resulted if Blackmon had been held responsible for another form of methamphetamine, the Court determined (and all agreed) that the career offender enhancement in § 4B1.1 applied, raising his offense level to 32. (Criminal Case, Doc. 62, ¶ 30). A defendant qualifies for

that enhancement if they are at least 18 years old at the time of their offense, "the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense," and "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).

Regardless of its force, an argument that the Sentencing Commission's methamphetamine guidelines are mistaken has little logical connection to the elements of the career offender enhancement. Even if the Court agreed that methamphetamine sentences, in general, require a closer look, Blackmon still would have to explain why the Court should *also* have deviated from the range required by career offender enhancement — a task he does not undertake here. Thus, Blackmon was not prejudiced by his counsel's failure to raise the methamphetamine disparity issue at sentencing.

## CONCLUSION

No hearing is necessary to resolve Blackmon's claims because "the files and records of the case conclusively show" that he is not entitled to relief. *Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010) (quoting 28 U.S.C. § 2255(b)). And, for the reasons stated above, his motion to vacate, set aside, or correct his sentence (Doc. 1) pursuant to 28 U.S.C. § 2255 is **DENIED**. This civil action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings requires district courts to consider whether to issue or deny a certificate of appealability when entering a final order adverse to a petitioner. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability

may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." To meet this standard, a petitioner "must have a constitutional claim (or an underlying procedural argument on which a constitutional claim depends), and he must 'demonstrate that reasonable jurists would find the district court's assessment of his constitutional claims debatable or wrong.'" *United States v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012) (quoting *Tennard v. Dretke,* 542 U.S. 274, 282 (2004)) (emphasis omitted). Here, reasonable jurists would not debate that all of Blackmon's claims lack merit. Accordingly, a certificate of appealability is denied.

### NOTICE OF APPELLATE RIGHTS

If Blackmon wishes to contest this Order, he has two options. He may seek review of the Order by the Seventh Circuit or request the undersigned to reconsider the Order before going to the Seventh Circuit. If Blackmon chooses to go straight to the Seventh Circuit, he will only be allowed to proceed on his appeal if he first obtains a certificate of appealability. The undersigned has already declined to issue a certificate of appealability. So, Blackmon must request a certificate of appealability from the Court of Appeals pursuant to Rule 22 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c). He must also file a notice of appeal within 30 days from the entry of judgment or order appealed from. Fed. R. App. P. 4(a)(1)(A). The deadline can be extended for a short time only if Blackmon files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. Fed. R. App. P. 4(a)(5)(A), (C); *see also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and

excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807-08 (7th Cir. 2011) (explaining the excusable neglect standard).

The current cost of filing an appeal with the Seventh Circuit is $605.00. The filing fee is due at the time the notice of appeal is filed. Fed. R. App. P. 3(e). If Blackmon cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* Fed. R. App. P. 24(a)(1)(C). The IFP motion must set forth the issues Blackmon plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

On the other hand, if Blackmon wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within 28 days of the entry of judgment, and the deadline *cannot* be extended. Fed. R. Civ. P. 59(e); 6(b)(2). The motion also must comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707-08 (7th Cir. 2010); *see also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be stopped. Fed. R. App. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. Fed. R. App. P. 4(a)(1)(A), (a)(4), & (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day window or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor*, 556 F.2d 818, 819-20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Blackmon showing excusable neglect or good cause.

**IT IS SO ORDERED.**

**DATED:   July 17, 2026**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**